ROBERT B. COHEN AND MARILYN W. COHEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohen v. Comm'r
Docket No. 3051-81. United States Tax Court
T.C. Memo 1983-254; 1983 Tax Ct. Memo LEXIS 529; 46 T.C.M. (CCH) 88; T.C.M. (RIA) 83254; May 9, 1983. *529 Decision will be entered for the respondent. *530 Robert B. Cohen, pro se. Kenneth J. Rubin, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' 1974 Federal income tax in the amount of $2,145.00 and an addition to tax under section 6653(b) [1] against petitioner-husband in the amount of $1,073. The issues for decision are: (1) whether petitioner-husband received income of $4,250.00 in the form of a "kickback;" (2) whether petitioner-husband is liable for an addition to tax under section 6653(b); and (3) whether the assessment of the tax is barred by the statute of limitations. *531 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, husband and wife, resided in Philadelphia, Pennsylvania, at the time their petition in this case was filed. They filed a joint Federal income tax return for the taxable year 1974. During the taxable year 1974, petitioner Robert B. Cohen (petitioner) was a practicing attorney, admitted to practice in the State of Pennsylvania. Petitioner had obtained his law degree from the University of Pennsylvania School of Law in 1962. Prior to attending law school, he had been graduated from Northwestern University in 1959 with a major in accounting. In July 1972, petitioner became the Solicitor of the Bensalem Township School Board (School Board), Bucks County, Pennsylvania, a position he retained beyond the taxable year 1974. In his capacity as Solicitor, petitioner engaged in dealings with architects on behalf of the School Board. In 1971, the School Board began considering plans for the design and construction of an elementary school in Bensalem Township. The architect's contract for the school was awarded *532 by the School Board to Joseph B. Baldino (Baldino) and Anthony Macaluso (Macaluso). These two individuals had formed a partnership during 1971 for the purpose of doing architectural work. Baldino and Macaluso agreed to make payoffs or kickbacks to School Board members in order to be awarded the architectural contract. The amount of the kickback was to be approximately ten percent of the architectural contract fee. Baldino made the payments to Reynold Yannessa (Yannessa), a member of the School Board. Sometime between July 1973 and September 1973, Baldino and Macaluso were awarded a second architect's contract by the School Board. This contract was in connection with the construction of a middle school in Bensalem Township. As with the first contract, they were required to kickback part of the architectural fee in exchange for an award of the middle school contract. Again, the amount of the kickback was to be determined based on a percentage of the architectural fee. During 1973, Baldino made a number of payments to Yannessa with regard to this contract. In the Spring of 1974, relationships between Baldino, Macaluso, and Yannessa became strained. Yannessa had apparently *533 begun denying that he had received kickbacks paid to him. As a result, Baldino and Macaluso decided that they no longer wanted to continue their agreement with Yannessa. During that same time period, Baldino came in contact by telephone with petitioner. As a result, meetings were arranged between petitioner, Baldino, and Macaluso. It was decided among the three individuals that all further kickbacks relating to the middle school would be made to petitioner rather than Yannessa. Baldino agreed to make payment to petitioner since he believed the School Board had become somewhat dissatisfied with his firm's work and he wanted to keep the middle school contract. In early August 1974, Baldino telephoned petitioner and arranged to meet with him in petitioner's office. On or about August 8, 1974, Baldino arrived at petitioner's office carrying an envelope containing $4,250.00 in small bills. Baldino and petitioner then entered an elevator in the office building. Once in the elevator, Baldino turned over the envelope containing the kickback money to petitioner. This was the only payment made to petitioner by Baldino. Sometime shortly after the payment to petitioner was made, *534 Baldino was informed by the School Board that the middle school project was suspended and that all work should be discontinued. Baldino and Macaluso were unable to get approval of their architectural plans from the State of Pennsylvania and ultimately their contract was cancelled by the School Board. Subsequently, the School Board hired another architect, Arthur Lee Stabler, to complete the work. Illegal payoffs and kickbacks were made by several architectural firms in exchange for awards of public contracts from the School Board. State and Federal grand juries were convened to investigate these matters. On October 20, 1977, a 20 count indictment was filed in the United States District Court for the Eastern District of Pennsylvania. The 41 page indictment charged petitioner and Yannessa with various offenses in violation of the United States Code, which included engaging in racketeering activity in connection with the School Board from about 1972 to the date of indictment in 1977, systematically obtaining payment of money from architects and others in order to influence the School Board on their behalf, and corruptly covering up such payments from the Federal Grand Jury, *535 the Internal Revenue Service, and the Federal Bureau of Investigation. Petitioner was charged with violations in 13 of the 20 counts. [2] Except for Counts I, II, VI, XII, all the charges summarized below were made solely against petitioner. [3]
(1) Count I. Racketeering offenses in violation of 18 U.S.C. sections 1961, 1962(c), and 1963. (2) Count II. Racketeering conspiracy offenses in violation of 18 U.S.C. sections 1961, 1962(d), and 1963. (3) Count V. Extortion of $4,250.00 from Baldino in August 1974 in violation of 18 U.S.C. sections 1951 and 2(a). (4) Count VI. Extortion of $15,000.00 from Richard Chorlton (Chorlton) and others acting on his behalf during a period from February 1973 continuing through December 1975 in violation of 18 U.S.C. sections 1951 and 2(a). (5) Count VII. Mail fraud with respect to a letter addressed to Penn State Engineering, Inc. (Engineering) in April 1973 in violation of 18 U.S.C. section 1341. (6) Count VIII. Extortion of $500.00 from Chorlton and others acting on his behalf in July and August *536 1975 in violation of 18 U.S.C. section 1951. (7) Count IX. Aiding and assisting mail fraud with respect to a letter addressed to co-defendant Reynold Yannessa from Arthur Stabler (Stabler) in September 1975 in violation of 18 U.S.C. sections 1341 and 2. (8) Count X. Extortion of $4,250.00 from Stabler through Norman Katz in September and October 1975 in violation of 18 U.S.C. section 1951. (9) Count XI. Extortion of $2,000.00 from Chorlton and others acting on his behalf in June 1976 in violation of 18 U.S.C. section 1951. (10) Count XII. Obstruction of justice by removing a check and a letter concerning petitioner from the books and records of Engineering which had been subpoenaed by a Federal Grand Jury in violation of 18 U.S.C. section 1503. (11) Count XIII. Obstruction of the criminal investigation of numerous violations of Titles 18 and 26 of the United States Code by agents of the Federal Bureau of Investigation and Internal Revenue Service in violation of 18 U.S.C. sections 1510 and 2. (12) Count XIX. *537 Willfully and knowingly, making and subscribing a matterially false Federal income tax return for 1974, which omitted substantial income, under penalties of perjury, on or about September 14, 1975 in violation of 26 U.S.C. section 7206(1). (13) Count XX. Willfully and knowingly, making and subscribing a materially false Federal income tax return for 1975, which omitted substantial income, under penalties of perjury on or about September 14, 1976 in violation of 26 U.S.C. section 7206(1). On March 23, 1978, after a three-week-long jury trial, petitioner was convicted on all but two of the 13 counts with which he was charged in the indictment. He was acquitted of Counts V and XI, both of which dealt with charges of extortion. [4] He served a prison term as a result of his convictions. *538 Respondent's position is that petitioner had taxable income as a result of the $4,250.00 payment from Baldino. Respondent also determined that petitioner had fraudulently omitted that amount from his 1974 return. Petitioner contends that he never received the payment in question. OPINION During 1974, petitioner was a lawyer admitted to and practicing in the State of Pennsylvania. Petitioner also served as Solicitor for the Bensalem Township School Board. Both before and during the taxable year in question, the School Board was actively involved in planning and constructing several schools in Bensalem Township. This activity included the hiring of architects. Several architectural firms were making illegal payoffs and kickbacks in exchange for awards of contracts by the School Board. A 20 count indictment was filed in the United States District Court for the Eastern District of Pennsylvania. The indictment charged petitioner and his co-defendant, Yannessa, with violations of Titles 18 and 26 of the United States Code. Petitioner was acquitted of extorting $4,250.00 from the architectural firm of Baldino and Macaluso as charged in Count V of the indictment.[5] The *539 first issue for decision is whether petitioner received the $4,250.00 in question. Notwithstanding his assertions to the contrary, petitioner bears the burden of proof on this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [6]
*540 Petitioner contends that his acquittal on Count V precludes a finding that he received the $4,250.00 payment from Baldino. We do not agree. Petitioner's acquittal at best establishes that the government failed to prove beyond a reasonable doubt that petitioner violated 18 U.S.C. sections 1951 and 2(a). See United States v. Cohen,455 F. Supp. 843, 852-853 (E.D. Pa. 1978). The acquittal does not conclusively establish that he did not receive the money. See American Tobacco Co. v. United States,328 U.S. 781, 787, n. 4 (1946); Cain v. Commissioner,460 F.2d 1243 (5th Cir. 1972), affg. T.C.Memo. 1971-45.6a
Petitioner stated in his brief that, aside from all else, this Court is left with the question of whether Baldino or petitioner is telling the truth. On brief, petitioner incredulously asserts that he was "an attorney with an unblemished record prior to his indictment and conviction." The contrary is true. It is his blemished record that led to his indictment and conviction on numerous criminal counts. Petitioner *541 also refers in his brief to his "record for honesty and credibility save for his one criminal conviction." He was convicted on numerous counts for his record of dishonesty over the period 1972 through 1977. After observing his demeanor at trial, we did not find petitioner credible. Baldino testified before this Court at length concerning the events leading up to and concluding with the $4,250.00 illegal payment to petitioner. [7] Our evaluation of the testimony of both petitioner and Baldino is founded upon "the ultimate task of a trier of the facts -- the distillation of truth from falsehood which is the daily grist of judicial life." Diaz v. Commissioner,58 T.C. 560, 564 (1972). Baldino candidly admitted to a history of illegal payments to a number of individuals in Pennsylvania. We found him to be a credible witness in this regard and we believe that the payment to petitioner was in fact made. Petitioner has failed to convince us otherwise. Welch v. Helvering,supra; Rule 142(a). *542 Baldino's contemporaneous records of his payoffs on the middle school were placed into evidence. Petitioner claims that these records do not show that the $4,250.00 payoff was made to him because Baldino's notation for that payoff was in red whereas the other notations were made in black. Baldino explained that since the records were originally intended for his own use, he merely used what was at hand to make the notation with reference to petitioner; i.e., a red pencil. Contrary to petitioner's assertions, if Baldino had intended to "set-up" petitioner, he would have been careful to make the notations with a black pencil to duplicate the manner in which the other entries were made. Petitioner also tries to make something out of the fact that his initials did not appear next to the $4,250.00. We observe that many of the other notations did not indicate the initials of the recipient but merely showed "10%," as in the case of the $4,250.00 amount. We have carefully analyzed and reviewed Baldino's contemporaneous records. We conclude that these records support Baldino's testimony and our finding that the $4,250.00 payoff was made to petitioner in 1974. Since we have found *543 that petitioner received the $4,250.00, we must also decide whether that amount was incorrectly omitted from his 1974 return and whether such omission was fraudulent. Petitioner makes no claim that he included the $4,250.00 in income for the taxable year. In fact, such a claim would be inconsistent with his denial of ever having received the payment. It is a well established rule that payoffs and kickbacks, whether or not the product of extortion, constitute taxable income to the recipient. Section 61; Rutkin v. United States,343 U.S. 130, 137 (1952); Cain v. Commissioner,supra.Accordingly, we find that petitioner incorrectly omitted the $4,250.00 payment from his 1974 gross income reported on his return. Nowhere in the record has petitioner claimed any exemptions, deductions or credits other than those shown on his return. We therefore find that the omission of the $4,250.00 resulted in an underpayment of tax. We turn now to the question of whether this underpayment was due to fraud within the meaning of section 6653(b). Section 6653(b) provides in pertinent part that: "If any part of any underpayment * * * of tax required to be *544 shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." The existence of fraud is a question of fact to be gleaned from the entire record. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980); Stratton v. Commissioner,54 T.C. 255 (1970).The burden of proof is on respondent. Section 7454(a); Rule 142(b). To meet this burden respondent must show by clear and convincing evidence that the taxpayer acted with the specific intent to evade a tax believed to be owning. Stoltzfus v. United States,398 F.2d 1002, 1004 (3rd Cir. 1968); Wilson v. Commissioner,76 T.C. 623, 633 (1981). Since direct proof of such fraudulent intent is seldom available, respondent may satisfy his burden with circumstantial evidence. Wilson v. Commissioner,supra;Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Petitioner was convicted of willfully and knowingly filing a false and fraudulent return for 1974 in violation of section 7206(1) under Count XIX of the indictment. *545 [8] Although respondent relies on the doctrine of collateral estoppel, we find it unnecessary to discuss that argument. [9] Our independent review of the entire record compels us to conclude that petitioner's omission of the $4,250.00 was done fraudulently with intent to evade a tax believed to be owing. *546 A number of factors lead us to this conclusion. First, we have considered the manner in which the payment was received from Baldino. Petitioner accompanied Baldino into an elevator in the building where petitioner's law office was located. While in the elevator, Baldino gave petitioner an envelope containing $4,250.00 in small bills. The transaction was conducted under a shroud of secrecy in order to ensure that the payoff would go undetected. Petitioner continued to conceal the payment in a later meeting with an agent of the Internal Revenue Service by denying that he received any payoffs from any architect. [10] Such concealment is evidence of fraud. McGee v. Commissioner,61 T.C. 249 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).
. Next, we have considered petitioner's numerous convictions for violations of Title 18 of the United States Code. Among others, these violations included racketeering, conspiracy, mail fraud, and extortion. While not direct evidence of fraud, they certainly are an indication of petitioner's propensity to operate outside the boundaries *547 of the law. Such a propensity is indicative of fraudulent intent. See Rogers v. Commissioner,111 F.2d 987 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938); see Whitten v. Commissioner,T.C. Memo. 1980-245. We have also considered petitioner's background and experience. Petitioner is a well educated individual, having been graduated from law school in 1962. In addition to his legal education, he also held an undergraduate degree in accounting from Northwestern University. This extensive education coupled with his business experience leads us to believe that petitioner was aware of his obligation to report the payoff from Baldino on his 1974 return. See Nachison v. Commissioner,T.C. Memo. 1981-113; Whitten v. Commissioner,supra.
We believe that all of the above factors viewed together constitute clear and convincing evidence of petitioner's fradulent intent to evade a tax believed to be owning. Accordingly, we find that respondent has met his burden of proof. The addition to tax under section 6653(b) is therefore sustained. The last issue before us concerns the statute of limitations. Petitioner's *548 1974 return was filed with the Internal Revenue Service on September 17, 1975. The notice of deficiency was mailed on November 21, 1980. Under the general rule provided by section 6501(a), the three-year statute of limitations would have expired prior to the issuance of the notice of deficiency in this case. An exception to the three-year statute of limitations is provided by section 6501(c)(1).That subsection provides in pertinent part that: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." Since we have found petitioner liable for the addition to tax under section 6653(b), there is no statute of limitation to bar the assessment. Vannaman v. Commissioner,54 T.C. 1011 (1970); see Whitten v. Commissioner,supra.
For the reasons stated above, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue, unless otherwise indicated.↩
2. The remaining counts of the indictment referred solely to Reynold Yannessa. ↩
3. It is clear that aside from Norman Katz, all the individuals named in Counts V, VIII, IX, X, and XI were architects with whom petitioner dealt.↩
4. The District Court's Memorandum and Order denying petitioner's motions for judgment of acquittal, a new trial, and in arrest of judgment is reported at United States v. Cohen,455 F. Supp. 843↩ (E.D. Pa. 1978).
5. Count V in pertinent part is set forth below: Count V
THE GRAND JURY FURTHER CHARGES THAT: 2. In or about August, 1974, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, ROBERT BAER COHEN, in his capacity as Solicitor for the School Board, did unlawfully obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3) and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that he knowingly and willfully obtained property, to wit: approximately $4,250, from Joseph B. Baldino and Anthony J. Macaluso, with the consent of the said Joseph B. Baldino and Anthony J. Macaluso, said consent being induced by wrongful use of fear of financial and economic loss and under color of official right. In violation of Title 18, United States Code, Sections 1951 and 2(a)↩. 6. All references to a rule are to the Tax Court Rules of Practice and Procedure.↩
6a. See also De Angeles v. Commissioner,T.C.Memo. 1983-78↩.
7. Petitioner unsuccessfully attempts to make much of the fact that Baldino had received both State and Federal grants of immunity. That part of the Federal immunity order contained in one of petitioner's exhibits reads as follows: "Now, therefore, it is ordered pursuant to 18 U.S.C., Section 6002, that the said Joseph Baldino give testimony or provide other information which he refuses to give or to provide on the basis of his privilege against self-incrimination as to all matters about which he may be interrogated before said Grand Jury. "It is further ordered that no testimony or other information given or provided by the said Joseph Baldino pursuant to the terms of this order may be used against the said Joseph Baldino in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this order." We view this immunity order as directing Baldino to tell the truth or be subect to sanctions. Baldino testified in the criminal case against petitioner that he gave petitioner $4,250.00 in cash in an elevator in the building where petitioner's law office was located. United States v. Cohen,supra,↩ 847. That testimony is consistent with his testimony before this Court.
8. Count XIX provided in full: Count XIX
THE GRAND JURY FURTHER CHARGES THAT: On or about the 14th day of September, 1975, in the Eastern District of Pennsylvania, the defendant, ROBERT BAER COHEN, a residence of Philadelphia, Pennsylvania, did willfully and knowingly make and subscribe a United States Individual Income Tax Return, Form 1040, for the calendar year 1974, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Director, Internal Revenue Service Center, Mid-Atlantic Region, at Philadelphia, Pennsylvania, which said income tax return he did not believe to be true and correct as to every material matter in that the said return reported total income of $68,422, whereas, as he then and there well knew and believed, he received substantial income in addition to that heretofore stated. In violation of Title 26, United States Code, Section 7206(1)↩. 9. See, however, Considine v. Commissioner,68 T.C. 52 (1977); Goodwin v. Commissioner,73 T.C. 215 (1979); Considine v. United States, 645 F.2d 925 (Ct.Cl. 1981); Considine v. United States,683 F.2d 1285↩ (9th Cir. 1982).
10. He was convicted on a number of counts of receiving payoffs from architects.↩